# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **In re** | In Chapter 11 proceedings |
| **STRATA TITLE, LLC,** | Case No.: 12-24242 |
| **Debtor.** | **Order Denying Motion Re Santerra Apartments, LLC** |

## I.  Introduction

The Court must decide (1) whether the operating agreement (Operating Agreement) of Santerra Apartments, LLC (Santerra) is an executory contract, (2) whether a purchase option within the Operating Agreement is enforceable, and (3) whether the Debtor's membership interests in Santerra can be forcibly purchased absent an order from this Court lifting the stay. The Court concludes that the Operating Agreement is an executory contract, the purchase option within the Operating Agreement was triggered by an unenforceable *ipso facto* clause, and a valid trigger of the purchase option would nevertheless require stay relief, which relief is not presently warranted. The Court, however, directs the Debtor to file its disclosure statement and plan of reorganization no later than June 3, 2013. That plan shall contain, among other things, provisions calling for the assumption or rejection of its executory contracts effective as of June 3, 2013.

## II.  Facts

The dispute between the parties centers on the interpretation and enforceability of the Operating Agreement.

The stated purpose of Santerra is to acquire, own, and operate a 128 unit apartment complex located at 3434 E. McDowell Road, Phoenix, Arizona (Property). The

1

Case 2:12-bk-24242-DPC    Doc 115    Filed 04/25/13    Entered 04/25/13 09:01:47    Desc
Main Document    Page 1 of 11

Property is the sole asset of Santerra. There is a $2,540,000 loan on the Property. That loan matures in June 2013.

Santerra is a manager managed limited liability company. John Lupypciw[1] serves as Santerra's manager. There are three members of Santerra:
- SAM REI, LLC (45%);
- SAM III, LLC (10%) (SAM REI, LLC and SAM III, LLC together SAM Parties); and
- Debtor (45%).[2]

Although Santerra is manager managed, certain actions of Santerra require the approval of a "Super Majority in Interest"[3] under Section 5.4[4] of the Operating Agreement, including borrowing money or selling substantially all of Santerra's property. Further, the removal and replacement of Santerra's manager requires a determination that removal is warranted by a super majority under Section 5.7[5] and 5.8[6] of the Operating Agreement.

---

[1] Mr. Lupypciw is the sole member of the Debtor.

[2] Exhibit A to the Operating Agreement lists John Lupypciw as a member of the Santerra, not the Debtor. However, no party contends that Mr. Lupypciw is a member of Santerra instead of Debtor. The Articles of Amendment filed with the Arizona Corporation Commission lists John Lupypciw as Santerra's manager and the Debtor and SAM REI, LLC as members owing a 20% interest or greater in Santerra.

[3] "'Super Majority in Interest' means one or more Members whose aggregate Participation Percentage exceeds 60% of the aggregate Participation Percentage of all Members." Section 2.1.26 of the Operating Agreement.

[4] <u>Section 5.4</u>:
> 5.4 *Actions Requiring Member Approval*. In addition to those actions for which this Agreement specifically requires the consent of the Members, the Manager shall not;
> 5.4.1 Take any of the following actions without first obtaining the approval of a Super Majority in Interest of the Members:
> 5.4.1.1 Sell or otherwise dispose of all or substantially all of the Company's Property in a single transaction or a series of related transactions.
> 5.4.1.2 Borrow money or incur indebtedness (other than trade debt incurred in the ordinary course of the Company's business) on behalf of the Company, mortgage, pledge, grant a security interest in, or otherwise encumber Property of the Company.
> 5.4.1.3 Enter into any contract or agreement between the Company and any Manager, Interest Holder, or Affiliate of a Manager or Interest Holder, provided that no Member who is involved in the contract or agreement shall be entitled to vote thereon.
> 5.4.2 Take any of the following actions without first obtaining the approval of a Super Majority in Interest of the Members:
> 5.4.2.1 Amend the Articles, other than any amendments required under the Act to correct an inaccuracy in the Articles.
> 5.4.2.2 File a voluntary petition in bankruptcy, make an assignment for the benefit of creditors of the Company, or consent to the appointment of a receiver for the Company or its Property.
> 5.4.2.3 Approve a plan of merger or consolidation of the Company with or into one or more business entities.

[5] <u>Section 5.7</u>:

Additionally, Section 7.6[7] and Exhibit B,[8] when read together, purport to give Santerra's members the ability to buyout the interest of another member if that member or interest holder files bankruptcy (Purchase Option).

---

[6] Section 5.8:

> 5.7 *Removal of Manager.* The Manager may only be removed, on thirty (30) days' written notice, upon any one or more of the following events: If the Manager is removed, John Lupypciw is still entitled to his 45% of profits earned.
>
>     5.7.1 The Manager willfully or intentionally violates, or recklessly disregards, the Manager's duties to the Company;
>
>     5.7.2 If the Manager is a Member or Affiliate of a Member, the Manager or his Affiliate withdraws as a Member from the Company; or
>
>     5.7.3 The Manager commits any act involving fraud, bad faith, gross negligence, dishonesty, or moral turpitude.
>
> The determination of whether one or more of such events exist shall be made by a Super Majority in Interest of the Members other than the Manager and shall be reviewable (by a court, arbitration panel or other tribunal) only for purposes of determining whether the decision was made in good faith.

> *Replacement of Manager.* If a Manager resigns or is removed for any reason, a new Manager shall be appointed by the affirmative vote of a Super Majority in Interest of the Members.

[7] Section 7.6:

> *Option On Bankruptcy.* Following the bankruptcy or similar event set forth in Section 29-733(4) or (5) of the Act of a Member or Interest Holder (the "Offeror"), if the Company is not dissolved pursuant to Section VIII, the other Members (the "Offerees") may, by giving notice to the Offeror within 90 days after the date all Offerees have actual knowledge or have been given notice of the bankruptcy or similar event, elect to purchase all (but not less than all) of the Offeror's Interest for a price, and on the terms, set forth in Exhibit B. If more than one Offeree Member elects to purchase the Offeror's Interest, each electing Offeree shall purchase the Interest in the same ratio that his Participation Percentage bears to the aggregate Participation Percentages of all electing Offerees or in such other proportion as the electing Offerees may all agree. If the Interest is not purchased by the Offerees, the Interest shall remain fully subject to and bound by the terms of this Agreement.

[8] Exhibit B:

> FORMULA FOR DETERMINING THE PURCHASE PRICE OF A MEMBER'S INTEREST AND PAYMENT TERMS PURSUANT TO SECTION VII
>
> The purchase price of an Interest acquired or sold pursuant to Section VII of this Agreement shall be the Net Equity of the Interest Holder (the "Offeror") in the Interest to be purchased. The purchase and sale shall be consummated on the date specified by the purchaser (the "Closing Date") which date shall not be sooner than fifteen (15) nor later than thirty (30) days after the determination of the Offeror's Net Equity. On the Closing Date, the purchaser shall pay in cash an amount equal to fifteen percent (15%) of the purchase price. The balance of the purchase price shall be represented by a promissory note bearing interest at the minimum rate required under the Code to avoid the imputation of interest on the unpaid principal balance of the note. The principal amount of the note shall be payable in five (5) equal annual installments plus interest on the unpaid principal balance outstanding.
>
>     For purposes of this Agreement, the Net Equity of an Offeror's Interest shall be the amount that would be distributed to such Offeror in liquidation of the Company if the Company were liquidated on the date notice of intent to purchase or sell the

3

The Debtor filed bankruptcy on November 6, 2012. The Debtor listed a 45% interest in Santerra and a 75% interest in Studio City Lofts, LLC on Schedule B of its bankruptcy schedules. On its original Schedule G the Debtor did not list any executory contracts.

On February 12, 2013,[9] the SAM Parties sent a letter to the Debtor's counsel indicating:
- The filing of Debtor's bankruptcy was an event of withdrawal under the Operating Agreement;
- The SAM Parties are not currently exercising the right to remove Mr. Lupypciw as Santerra's manager, but reserved the right to do so;
- The SAM Parties were giving notice of their intention to exercise the Purchase Option; and
- There was a current letter of intent [presumably for the purchase of the Property] for $4,375,000.

The Debtor quickly replied to the letter demanding withdrawal of the notice exercising the Purchase Option as a violation of the stay. According to the Debtor, the SAM Parties

---

Offeror's Interest is given (the "Valuation Date"), and (i) all of the Company's Property were sold for its fair market value, (ii) the Company paid its accrued but unpaid liabilities, and (iii) the Company distributed the remaining proceeds to the Members.

The fair market value of the Company's Property as of the Valuation Date shall be determined by a Qualified Appraiser acceptable to the Offeror and the purchaser(s). For these purposes, a "Qualified Appraiser" means a person who is not an Affiliate of the Manager or any Interest Holder and who is experienced in appraising property similar to that of the Company. If the Offeror and the purchaser(s) are unable to agree on a single Qualified Appraiser within thirty (30) days of the Valuation Date, then within forty-five (45) days of the Valuation Date the Offeror and the purchaser(s) each shall appoint a Qualified Appraiser. If the fair market value of the Company's Property as determined by the lower of the two appraisals is equal to or greater than ninety percent (90%) of the fair market value as determined by the higher appraisal, then the fair market value of the Company's Property shall be deemed to be the average of the two appraisals. If the fair market value of the Company's Property as determined by the lower appraisal is less than ninety percent (90%) of the fair market value as determined by the higher appraisal, then the two Qualified Appraisers shall, within five (5) business days after the last of the two appraisal reports is delivered to the parties, agree on a third Qualified Appraiser. The fair market value of the Company's Property shall be deemed to be equal to the average of the two appraisals with the least dollar variation between them; provided, however, that the fair market value shall be no higher than the higher of the two original appraisals nor lower than the lower of the two original appraisals; and provided, further, that if one appraisal is the average of the other two appraisals, then the fair market value shall be deemed to be the average of all three appraisals. Each Qualified Appraiser shall be instructed to provide an appraisal report within thirty (30) days of his appointment and all costs of appraisal shall be borne equally by the Offeror and the purchaser(s).

[9] The Debtor refers a February 14, 2013 letter sent via email on February 15th as Exhibit C to the Debtor's complaint. However, Exhibit C is a second copy of the February 12, 2013 letter. For purposes of this decision, the Court takes the Debtor's representation as true.

4

did not cure the alleged stay violation, but instead insisted on the ability to proceed with the Purchase Option.

On February 18, 2013, the SAM Parties filed a motion (Motion) seeking this Court's order declaring that the Operating Agreement is not an executory contract, that the Purchase Option is enforceable, and that the exercise of the Purchase Option is not stayed under § 362. Alternatively, the SAM Parties requested stay relief to pursue the Purchase Option and requested a Court order requiring the Debtor to assume or reject the Operating Agreement.

On February 21, 2013, the Debtor filed an amended Schedule G listing the Operating Agreement as one of Debtor's executory contracts.

On February 25, 2013, the Debtor filed a complaint (13-ap-00221) against the SAM Parties and their counsel alleging violations of the stay. (Adversary Proceeding). On March 6, 2013, the Debtor filed its motion in the Adversary Proceeding seeking a temporary restraining order and preliminary injunction.

On February 26, 2013, Mr. Morrill sent Mr. Ellett an email stating "We have heard that there is a signed agreement to sell the apartment complex. We're not sure how this can be, since the Operating Agreement requires our approval for a sale. Could you please get me a copy of any such signed sale agreement as soon as possible?" On April 23, 2013, the SAM Parties notified the Court that, on April 8, 2013, the buyer cancelled its offer. See docket #112. At no time during this chapter 11 case has the Debtor filed a motion under § 363 seeking this Court's approval of a sale of the Debtor's interest in Santerra or a filed a notice that Mr. Lupypciw was selling Santerra's apartment complex.

On March 20, 2013, the Court heard oral arguments on the Motion and the request for temporary restraining order and preliminary injunction.

**III. Issues**

A. Is the Operating Agreement an executory contract?

B. Is the Purchase Option an unenforceable *ipso facto* clause?

1    C. Does 11 U.S.C. §362 stay the SAM Parties from exercising the Purchase
2 Option?
3    D. Are the SAM Parties entitled to stay relief to exercise the Purchase
4 Option?
5    E. Should the Court set a deadline for the Debtor to assume or reject the
6 Operating Agreement?
7    F. Should the Court enter a temporary restraining order or preliminary
8 injunction in the Adversary Proceeding?
9 **IV.   Discussion**
10 *A.   Executory Contract*

The Ninth Circuit has adopted the "Countryman Test"[10] to determine if a contact is executory. *In re Ehmann*, 319 B.R. 200, 203 (Bankr. D. Ariz. 2005). "[A] contract is executory if 'the obligations of both parties are so far unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other.'" *Id.* at 203-04. As stressed by the SAM Parties, remote possibilities of future obligations do not make a contract executory. *In re Capital Acquisitions & Management Corp.*, 341 B.R. 632, 636 (Bankr. N.D. Ill. 2006).

Although Santerra is a manager managed LLC, there are certain actions which require approval by 60% -- a super majority -- of the membership interest of Santerra.[11] Three of these super majority provisions are not remote and are material: 1) sale of the Property; 2) refinancing of the Property; and 3) removal of the manager. It is clear from the pleadings and representations in Court that Santerra (and Mr. Lupypicw) are actively marketing the Property. Moreover, Santerra is facing a June 2013 refinancing deadline. The SAM Parties have also made a not so veiled reference to removing Mr. Lupypciw as manager. These issues require resolution through the Debtor's active participation. If the Debtor or Santerra's other members do not timely and in good faith make these decisions

---

[10] *See* Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L.Rev. 439, 460 (1973).
[11] For all practical purposes a super majority requires SAM Parties and Debtor to agree. The SAM Parties hold 55% of Santerra, Strata holds 45%.

Case 2:12-bk-24242-DPC    Doc 115    Filed 04/25/13    Entered 04/25/13 09:01:47    Desc
Main Document    Page 6 of 11

required by the Operating Agreement, there will be a breach of the Operating Agreement. For these reasons, the Court concludes the Operating Agreement is an executory contract.

B.   *Ipso Facto Clause*

The Bankruptcy Code generally disallows the enforcement of *ipso facto* clauses. *See* 11 U.S.C. §§ 363(l), 365(e), and 541(c); *In re Lopez*, 372 B.R. 40, n. 21 (9th Cir. BAP 2007). The SAM Parties rely on two cases to support their contention that the Purchase Option is not an unenforceable *ipso facto* clause: *In re Farmers Markets, Inc.*, 792 F.2d 1400 (9th Cir. 1986) and *In re Capital Acquisitions & Management Corp.*, 341 B.R. 632 (Bankr.N.D. Ill. 2006). These cases do not support the SAM Parties' position. Instead, these cases demonstrate that the Purchase Option is an unenforceable *ipso facto* clause.

According to *Farmers Market* the purpose and effect of Section 541(c) is to avoid "only those restrictions which prevent transfer of the debtor's property to the estate." *Id.* at 1402. The SAM Parties readily admit that the Debtor's membership interest in Santerra is property of the estate.[12] Here, according to the SAM Parties, the Purchase Option did not prevent the transfer of the Debtor's membership interest in Santerra from passing to the bankruptcy estate.

However, the SAM Parties do not complete the analysis. Section 363(l)[13] protects property of the estate during bankruptcy. As pointed out in *In re Transcon Lines,* §541(c) "acts to ensure that all property of the debtor becomes property of the bankruptcy estate... [§] 363(l) protects the 'use' of such property once it is in the hands of the bankruptcy estate." *In Re Transcon Lines*, 58 F.3d 1432, 1438 (9th Cir. 1995). In other words, once

---

[12] *See* footnote 2 of the Motion. This footnote, like much of the Motion, is inexplicably duplicated verbatim in the SAM Parties' Reply (docket #73).

[13] Section 363(l) reads:
> Subject to the provisions of section 365, the trustee may use, sell, or lease property under subsection (b) or (c) of this section, or a plan under chapter 11, 12, or 13 of this title may provide for the use, sale, or lease of property, notwithstanding any provision in a contract, a lease, or applicable law that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title concerning the debtor, or on the appointment of or the taking possession by a trustee in a case under this title or a custodian, and that effects, or gives an option to effect, a forfeiture, modification, or termination of the debtor's interest in such property.

7

the membership interest became property of the estate under §541(c), §363(l) invalidates any provision that limits the debtor-in-possession's continued use or sale of the property based on the filing of the bankruptcy.

The SAM Parties are correct that the *Capital Acquisitions* court determined that a right of first refusal in an LLC operating agreement was enforceable. However, the case at bar is distinguishable on two fronts. First, the *Capital Acquisitions* court noted that the right of first refusal clause was not triggered by the filing of a bankruptcy.[14] Here, the only trigger in Purchase Option is the filing of Debtor's bankruptcy. Second, in *Capital Acquisitions,* the Debtor's court appointed receiver was the party initiating the sale and the other LLC members were enforcing their right of first refusal -- a right that existed with or without the bankruptcy. Here, the SAM Parties are trying to initiate a sale of the bankruptcy estate's property interests against the will of the debtor-in-possession. While a purchase option in operating agreements may be enforceable in some circumstances, it is not presently enforceable by Santerra or the SAM Parties since it was triggered solely by the filing of Debtor's bankruptcy.

C.  *Stay Violation*

Even if the Purchase Option was not triggered by an unenforceable *ipso facto* clause, exercising the Purchase Option would be a violation of the stay under §362(a)(3). Section 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." The SAM Parties wish to force a sale of the Debtor's membership interests in Santerra. The Court finds that authorizing the SAM Parties to exercise the Purchase Option would be an act to obtain possession of estate property in violation of §362(a)(3).

The SAM Parties attempt to distinguish factually similar cases on the premise that, in all those cases the bankruptcy estate had suffered, or would suffer, significant

---

[14] "The right of first refusal was not triggered by the debtors' insolvency, or by the filing of a bankruptcy case, or by the appointment of a trustee or custodian. Therefore, it was not an *ipso facto* clause and was enforceable." *Capital Acquisitions* at 637. The Court notes that the Santerra Operating Agreement contains a right of first refusal in Section 7.3.

8

Case 2:12-bk-24242-DPC    Doc 115    Filed 04/25/13    Entered 04/25/13 09:01:47    Desc
Main Document    Page 8 of 11

economic detriment if those member's actions were allowed to proceed.[15] In effect, the SAM Parties would read the following highlighted language into §362(a): A bankruptcy petition "operates as a stay, applicable to all entities, of-- … (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate, <u>unless such act would provide economic value to the estate</u>." The Court is unaware of, and the SAM Parties do not point to, any cases that so provide. In the Court's view, the text of §362(a)(3) is clear: an act to obtain estate property is protected by the stay, even if the stayed act would result in some benefit to the Debtor. Moreover, as demonstrated during oral arguments, there is a sharp disagreement between the parties as to the true value of Santerra's apartment complex. The Purchase Option also arguably permits under payment for the Debtor's interest in Santerra because it provides for current payment of only 15% of the estate's membership interest with the balance to be paid in 5 years on an unsecured basis with interim interest only payments at a below market interest rate. Thus, even if §362(a)(3) did not stay the forced sale of the Debtor's interests in Santerra, as the SAM Parties contend, the record shows the possibility of economic harm to the Debtor if the Purchase Option is presently exercised.

D.   *Relief from Stay*

The SAM Parties argue that cause exists warranting stay relief on three grounds: 1) they are entitled to purchase the membership interest under the Operating Agreement; 2) the member interests in the LLCs are both "single asset real estate" and there has been no plan filed within 90 days after commencement of the case; and 3) the SAM Parties should be allowed to disentangle themselves from this bankruptcy. The Court finds none of these grounds constitute cause.

First, as explained above, the SAM Parties are not entitled to presently exercise the Purchase Option under the Operating Agreement. Second, the Debtor's membership interest in Santerra is not real property. Debtor's bankruptcy is, therefore, not a "single asset real estate" case within the meaning of §101(51B). Moreover, even if it did meet the

---

[15]See the Motion at p. 10-11.

definition, §362(d)(3) only allows stay relief for a creditor. The SAM Parties are not creditors of this Debtor. Finally, a desire to be "disentangled" from a bankruptcy does not constitute cause for lifting the stay as most, in not all, interested parties wish to be disentangled from bankruptcies in which they find themselves entangled. The SAM Parties' lift stay Motion is denied without prejudice.

E.  *Assume or Reject*

The SAM Parties ask the Court to set a deadline for the Debtor to assume or reject the Operating Agreement. Under §365(d)(2), a trustee (in this case the Debtor) can accept or reject an executory contract at any time before confirmation of the plan unless the Court orders a specific time to assume or reject the contract. Debtors in possession must be given a reasonable time to decide whether to accept or reject an executory contract. *In re Rebel Rents*, 291 B.R. 520, 530 (Bankr. C.D. Cal. 2003). What constitutes reasonable time is within the discretion of the bankruptcy court. *Id.* In the exercise of this discretion, the Court hereby directs the Debtor to file its disclosure statement and plan of reorganization no later than June 3, 2013. That plan shall contain, among other things, provisions calling for the assumption or rejection of its executory contracts effective as of June 3, 2013.

F.  *Motion for Temporary Restraining Order and Preliminary Injunction*

Based on this decision, the Debtor's motion for a temporary restraining order and preliminary injunction are moot.[16]

V.  **Conclusion**

The SAM Parties' Motion for declaratory relief is denied as the Court has determined that the Operating Agreement is an executory contract, the Purchase Option is an unenforceable *ipso facto* clause, and exercising the Purchase Option would be a

---

[16] The Court does not need to decide whether a stay violation occurred as part of this Order. However, based on the information it has heard, the Court doubts whether a stay violation did in fact occur. Resolving the enforceability of the Purchase Option was an issue that the Court inevitably needed to decide. Moreover, it is highly doubtful that, if a stay violation did occur, it caused any damage. Soon after the alleged February 15, 2013 letter, the SAM Parties filed the Motion. The Court has not seen evidence that the SAM Parties continued pursuing the Purchase Option once the Motion was filed.

10

violation of the automatic stay. Further, the SAM Parties' alternative request to lift the stay is denied. The Debtor's motion for a temporary restraining order and preliminary injunction are denied as moot for which the Court will issue a separate order in the Adversary Proceeding. Finally, it is hereby

**ORDERED** that the Debtor shall file its disclosure statement and plan of reorganization no later than June 3, 2013. The Debtor's plan shall contain, among other things, provisions calling for the assumption or rejection of its executory contracts effective as of June 3, 2013.

**IT IS FURTHER ORDERED** that June 3, 2013 shall be the date by which all claims, except administrative claims, shall be filed with this Court and that the Clerk of the Court shall send notice of such claims bar date to all parties appearing on the master mailing list.

**So ordered.**

Dated: April 25, 2013

DANIEL P. COLLINS
UNITED STATES BANKRUPTCY JUDGE

COPY of the foregoing mailed by the BNC and/or sent by auto-generated mail to:

All interested parties