# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **In re** | ) In Chapter 11 proceedings |
| **STRATA TITLE, LLC,** | ) Case No.: 12-24242 |
| Debtor. | ) (Not for Publication- Electronic Docketing ONLY) |
| | ) UNDER ADVISEMENT DECISION DETERMINING: |
| | ) 1) MEMBERSHIP INTERESTS ARE NO LONGER ESTATE PROPERTY |
| | ) and |
| | ) 2) ORDER LIFTING THE SECTION 362(a) STAY IS LIFTED |

According to Schedule 1 of the Tempe Tower, LLC Operating Agreement, on February 24, 2013, the Debtor's membership interests in Tempe Tower changed from 50% to zero and Pure Country's membership interests changed from 50% to 100%. The Court has been asked to determine if Schedule 1 is enforceable under Arizona and Bankruptcy laws. The Court determines that Schedule 1 can be enforced.

I.  **Facts**[1]

The Debtor filed its chapter 11 petition on November 6, 2012 (Petition Date). The Debtor is a single member limited liability company with John Lupyciw as its sole member. The Debtor did not list an interest in Tempe Tower, LLC (Tempe Tower) on its original schedules (November 20, 2012, Dkt #17), but later amended Schedule B, claiming a 70% interest in Tempe Tower.

---

[1] This is the Court's findings of fact and conclusions of law under Rule 7052. The Court has jurisdiction and this is a core proceeding under 28 U.S.C. §§ 1334 and 157.

Tempe Tower is a sole purpose LLC created to own and operate real property at 230 W. Fifth Street, Tempe, AZ (Property). When formed, Debtor and Pure Country Tower, LLC (Pure Country) each held a 50% membership interest in Tempe Tower. At formation, Mr. Lupypciw was the manager of Tempe Tower. Tempe Tower is a manager managed LLC according to the terms of the operating agreement entered into by the parties on February 24, 2012 (Operating Agreement).

Schedule 1 of the Operating Agreement[2] has been the centerpiece of the dispute between the parties. According to Schedule 1, the Debtor and Pure Country each initially held a 50% membership interest in Tempe Tower. According to Schedule 1, once Pure Country's initial capital contribution of $850,000 was returned to Pure Capital the membership interests would change to 70% for the Debtor and 30% for Pure Country. However, Schedule 1 also provided:

> . . . in the event that PCT does not receive 100% of its initial Capital Contribution in the amount of $850,000.00 on or before February 23, 2013 ("CC Return Date"), John Lupypciw hereby irrevocably assigns his and the entire right, title and interest of Strata Title, LLC in the Company to PCT or its nominee, so that following the CC Return Date PCT or its nominee shall own one hundred percent (100%) of the Percentage Interest in the Company . . .

---

[2] Schedule 1 reads:
SCHEDULE OF PERCENTAGE INTERESTS
The following shall be the Percentage Interests of the Members of the Company:

| Name of Member | Percentage Interest |
|---|---|
| Strata Title, LLC | 50% |
| Pure Country Tower, LLC | 50% |

The Percentage Interests shall be subject to the following adjustments:
(1) Subject to subsection (2) below, at such time as 100% of PCT's initial Capital Contribution in the amount of $850,000.00 is returned to PCT, the Percentage Interest of the Members shall be:

| Strata Title, LLC | 70% |
|---|---|
| Pure Country Tower, LLC | 30% |

(2) Notwithstanding anything to the contrary herein, in the event that PCT does not receive 100% of its initial Capital Contribution in the amount of $850,000.00 on or before February 23, 2013 ("CC Return Date"), John Lupypciw hereby irrevocably assigns his and the entire right, title and interest of Strata Title, LLC in the Company to PCT or its nominee, so that following the CC Return Date PCT or its nominee shall own one hundred percent (100%) of the Percentage Interest in the Company and Strata Title, LLC shall not be entitled to any return of any Capital Contributions or other amounts advanced or loaned to the Company prior to such time. This provision shall be self-operative but John Lupypciw shall within five (5) days of PCT's request execute any instrument reasonably requested by PCT to evidence or confirm the same.

Prior to the February 23, 2013 deadline, the Debtor brought an emergency motion to reject the Operating Agreement as an executory contract. Pure Country objected, claiming that the Operating Agreement is not executory. The Court held an accelerated hearing and soon after ruled that the Operating Agreement is executory and granted the Debtor's motion to reject. (February 22, 2013, Dkt #55). As part of its ruling, the Court specifically made no finding on the binding nature or effectiveness of Schedule 1.

Pure Country now asks the Court for an order declaring that the Debtor's membership interest is not now (or at the Petition Date) property of the estate. Alternatively, Pure Country asks for stay relief to compel the Debtor to transfer the membership interest to Pure Country. Alternatively, Pure Country asks for a determination that it holds a secured interest in the Debtor's membership interests and asks for stay relief so it can foreclose on its collateral.

**II.  Issues**

A.  Were the membership interest in Tempe Tower property of the estate at filing?

B.  What effect does rejection of the Operating Agreement have on enforcement of Schedule 1?

C.  Does Pure Country hold a perfected security interest in the membership interests?

D.  Does the Debtor still hold a property interest in the membership interests under the terms of the Operating Agreement?

E.  Is stay relief warranted?

**III.  Discussion**

A.  *Property of the Estate at Filing?*

Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). A debtor's property rights are defined at state law. *See Butner v. United States*, 440 U.S. 48, 55 (1979). Arizona law determines whether the membership interests in question are property of the estate. *In re First Protection, Inc.*, 440 B.R. 821, 828-829 (9th Cir. B.A.P. 2010).[3]

---

[3] See also Paragraph 15.5 of the Operating Agreement.

Membership interests in LLCs can become property of the estate. *Id.*; *see also In re Ehmann*, 319 B.R. 200, 206 (Bankr. D. Ariz. 2005).

Pure Country acknowledges that membership interests can be property of the estate, but claims the Debtor's membership interests in Tempe Tower did not become property of the estate because they were absolutely assigned to Pure Country prepetition. *See e.g. In re Clark*, 47 B.R. 88, 89 (Bankr. D. Vt. 1985); *In re Brooks*, 248 B.R. 99, 102 (Bankr. W.D. Mich. 2000). The Debtor counters that the assignment was not absolute, but instead was offered as security for the repayment of Pure Country's $850,000 capital contribution. The Court concludes that the assignment referenced in Schedule 1 was not an absolute assignment.

An assignment of an interest in a note is absolute if the assignment transfers title of the note to the assignee who has the immediate right to pursue payment on the loan. 6 AM. JUR. 2D ASSIGNMENTS § 110. Comparatively, an asset is pledged as security if the "creditor must wait until the debtor defaults on the loan before the asset may be used for payment." *Id*. The intent of the parties will determine if an assignment is absolute. *Skarecky & Horenstein, P.A. v. 3605 North 36th Street Co.*, 825 P.2d 949 (Ariz. Ct. App. 1991). The label attached to the transaction does not control. *In re Evergreen Valley Resort, Inc.*, 23 B.R. 659, 661 (Bankr. D. Me. 1982) (cited with approval by *In re Contractors Equipment Supply Co.*, 861 F.2d 241, 245 (9th Cir. 1988)). The *Evergreen* factors indicating a security agreement include:

- the assignee retains a right to a deficiency on the debt if the assignment does not provide sufficient funds to satisfy the amount of debt;
- the assignee acknowledges that his rights in the assigned property would be extinguished if the debt owed were to be paid through some other source;
- assignee must account to the assignor for any surplus received from the assignment over the amount of the debt;
- the assignor's debt is not reduced on account of the assignment; and
- the contract language itself may express the intent that the assignment is for security only.

*Id.* at 661. By contrast, "where the assignment operates to discharge the underlying debt" an assignment is absolute. *Id.* at 661-62.

Here, the facts indicate that the assignment was not absolute. Yes, Schedule 1 does state that the assignment is absolute and irrevocable. However, the assignment can be eliminated by the payment of $850,000 which can be paid from any source. There is no indication that the Debtors' liability to Pure Country was reduced based on the assignment. Importantly, there was no immediate transfer of the Debtor's membership interest in Tempe Towers to Pure Country when the Operating Agreement was signed. At the Petition Date, the membership interests were property of this bankruptcy estate.

Whether the Debtor's membership interests are still property of the estate will be answered in Section D below.

B.   *Effect of Rejection*

On February 22, 2013, the Court granted the Debtor's motion to reject the Operating Agreement. Rejection of an executory contract does not terminate the contract. *In re Bergt*, 241 B.R. 17, 25 (Bankr. D. Alaska 1999). Instead, rejection is treated as if a breach occurred prepetition. 11 U.S.C. § 365(g); *Bergt*, 241 B.R. at 25. The effect of rejection is to turn damages from an administrative expense to an unsecured claim. *Id.* "[S]tate contract law generally defines a party's rights, while federal bankruptcy law determines how those rights are enforced in a bankruptcy case." *Id.* at 35. Under Andrew's[4] and Westbrook's[5] approach to executory contracts, rejection under § 365 does not terminate a non-debtor's rights in property -- such rights "persist if they would persist under state law." *Id.* at 22. Accordingly, the Court will look to state law to determine the parties' rights under Schedule 1 and turn to the Bankruptcy Code to determine how those rights are to be treated in bankruptcy.

C.   *Does Pure Country hold a perfected security interest in the membership interests?*

Pure Country acknowledges that in most cases membership interests in an LLC are general intangibles which would be perfected by the filing of a UCC statement. *See*

---

[4] Michael T. Andrew, *Executory Contracts in Bankruptcy: Understanding 'Rejection'*, 59 U. COLO. L. REV. 845 (1988) and Michael T. Andrew, *Executory Contracts Revisited: A Reply to Professor Westbrook*, 62 U. COLO. L. REV. 1 (1991).
[5] Jay Lawrence Westbrook, *A Functional Analysis of Executory Contracts*, 74 MINN. L. REV. 227 (1989).

A.R.S. §§ 47-9102(A)(42); 47-9310(A). Pure Country failed to do so. Accordingly, to enforce Schedule 1 as a lien interest, Pure Country must have perfected it on other grounds.

According to Pure Country, the membership interests are a form of "investment property" under A.R.S. § 47-9102(A)(49) which can be perfected by control under A.R.S. §§ 47-9312(B) and 47-9314(A). In support of its view, Pure Country points to Section 5.5(b)[6] of the Operating Agreement in which the members acknowledge that the membership interests have not been registered as securities.

The Court must first determine if the membership interests are investment property under the UCC. "Investment property" is defined under the UCC as "a security, whether certificated or uncertificated, security entitlement, securities account, commodity contract or commodity account." A.R.S. § 47-9102(A)(49). "Security", defined under A.R.S. § 47-8102(A)(15), is limited by A.R.S. § 47-8103. Under A.R.S. § 47-8103(C):

> An interest in a partnership or limited liability company is not a security unless it is dealt in or traded on securities exchanges or in securities markets, its terms expressly provide that it is a security governed by this chapter, or it is an investment company security. However, an interest in a partnership or limited liability company is a financial asset if it is held in a securities account.

Here, there is no allegation that the Tempe Tower membership interests can be traded on a securities exchange or is an investment company security. Apparently, Pure Country is attempting to argue, via Section 5.5(b) of the Operating Agreement, that Article 8 of the UCC applies to the membership interests. However, § 47-8103(C) is clear -- "a limited liability company is not a security unless . . . its terms <u>expressly</u> provide that it is a security." (emphasis added). Section 5.5(b) is not such an express provision.

---

[6] Section 5.5(b) reads:
> the Member understands that the Membership Interests have not been registered under the Securities Act of 1933 (the "1933 Act"), the Arizona Securities Act (the "Arizona Act") or the securities laws of any other jurisdiction and must be held indefinitely without any transfer, sale, or other disposition unless the transfer of the Membership Interests is subsequently registered under the 1933 Act, the Arizona Act, and any applicable securities laws of any other jurisdiction or, in the opinion of counsel for Company, registration is not required under the 1933 Act, the Arizona Act, or any applicable securities laws of any other jurisdiction as the result of available exemptions;

Additionally, there are no membership certificates or similar documents indicating that the parties intended to treat the membership interests as securities. Because the membership interests "are not securities under Article Eight, they cannot be investment property under Article Nine." *In re Brown*, 479 B.R. 112, 117 (Bankr. D. Kan. 2012). Because the membership interests are not investment property under Article Nine perfection by control cannot occur. Therefore, if Schedule 1 created a security interest in the membership interests, that security interest was not perfected.

D. *Does the Debtor still hold a property interest in the membership interests under the terms of the Operating Agreement?*

The Debtor, as debtor-in-possession, has the ability to avoid an unperfected lien under § 544. However, the Debtor's membership interests are subject to the strictures of the Operating Agreement because the trustee[7] takes that asset subject to the provisions of that contract. The Debtor's rejection of the Operating Agreement as an executory contract does not affect the parties' substantive rights under the Operating Agreement. 3 COLLIER ON BANKRUPTCY § 365.10[1] (Alan N. Resnick, et al. eds., 16th ed. 2012). Though § 544 gives the Debtor the ability to avoid the Schedule 1 pledge as a security interest, it does not enable the Debtor to avoid the consequences of Schedule 1 as a contractual term if, under Arizona law, its provisions are effective despite the lack of perfection.

A trustee takes possession of estate property, including executory contracts, subject to state law. Pursuant to A.R.S. § 29-682:

> A. The members of a limited liability company may adopt an operating agreement containing provisions they deem appropriate. All or part of an operating agreement may be subsequently repealed or amended by agreement or consent of all of the members or, to the extent an operating agreement so provides, by all of the managers or a specified portion of the members or managers.
> B. An operating agreement governs relations among the members and the managers and between the members and managers and the limited liability company and may contain any provision that is not contrary to law and that relates to the business of the limited liability company, the conduct of its affairs, its rights, duties or powers and the rights, duties or powers of its members, managers, officers, employees or agents including:
> * * *

---

[7] In this case the Debtor, as debtor-in-possession.

> 2. Providing for classes or groups of members with various rights, powers and duties and providing for the future creation of additional classes or groups of members with relative rights, powers and duties superior, equal or inferior to existing classes and groups of members.
> * * *
> 5. Restrictions on the transfer of and option rights to acquire or sell any member's interest in the limited liability company.

A.R.S. § 29-682(A) gives members of an LLC the authority to adopt provisions in an operating agreement that they deem appropriate. A.R.S. § 29-682(B) makes it clear that an operating agreement governs the relations between members and may contain provisions regarding changes in classes of members (subsection (B)(2)) and rights to acquire member's interests (subsection (B)(5)).

Here, what the Debtor owned at the time of filing was a 50% membership interest in Tempe Tower which expired unless Pure Country received $850,000 by February 23, 2013. This provision is the type allowed by A.R.S. § 29-682. It is important to note that none of the parties to Schedule 1 are strangers to the Operating Agreement. Mr. Lupypciw was the manager. Pure Country is a member. The Debtor is a member. Each of them freely agreed to abide by the provisions of Schedule 1. Under terms of the Operating Agreement, the Debtor's membership interests in Tempe Tower could only remain property of the Debtor if it paid $850,000 to Pure Country by February 23, 2013. Having failed to do so, the Debtor ceased to own any membership interests in Tempe Tower as of February 24, 2013.

The automatic stay did not prevent this outcome because § 362 does not alter existing rights in a contract. *In re Pridham*, 31 B.R. 497, 498 (Bankr. D. Cal. 1983). Key to this conclusion is that § 362(a)(3) prevents <u>acts</u> to obtain possession of property of the estate. *See In re Richardson*, 135 B.R. 256 (Bankr. E.D. Tex. 1992) (determining that a violation of § 362(a) requires an affirmative action). Schedule 1 required no action by Pure Country, or any other party, to change the membership interest of the Debtor in Tempe Tower. Instead, the simple passage of time changed the nature of the property the Debtor once owned. *See Pridham*, 31 B.R. at 499 ("The mere running of time on contractual rights is not an act of a creditor within the meaning of Section 362(a).").

*E.     Is stay relief warranted?*

To the extent the Debtor's membership interests were still protected by § 362(a)(3) or if further acts are necessary to obtain possession and control of the Debtor's membership interests, the stay can be lifted under § 362(d)(1) for cause. Here cause exists on several grounds. First under Schedule 1, the non-payment of $850,000 by February 23, 2013 results in Pure Country owning 100% of the LLC membership interests with no further action by any party. Additionally, the Debtor has not shown, or even claimed, the ability to pay Pure Country $850,000. Next, the Debtor has not offered adequate protection to Pure Country. Finally, by rejection of the Operating Agreement, the Debtor has manifested its intent to not honor the terms of the Operating Agreement. On such grounds, to the extent stay relief is necessary for Pure Country to proceed as it wishes, stay relief is granted to Pure Country.

**IV.    Conclusion**

Though the Debtor's membership interests in Tempe Towers were property of the estate at the time of filing, those membership interests were subject to Arizona law. Under Arizona law, parties to an operating agreement can contract, as the parties here did in Schedule 1, for changes in membership interests between the parties. Stay relief to effectuate Schedule 1 was unnecessary as it required no affirmative acts. necessary to effectuate Schedule 1, cause exists to do so and the stay is hereby lifted immediately.

**So ordered.**

Dated:          June 6, 2013

_____
DANIEL P. COLLINS
UNITED STATES BANKRUPTCY JUDGE

COPY of the foregoing mailed by the BNC and/or
sent by auto-generated mail to:

All interested parties