UNITED STATES BANKRUPTCY COURT
DISTRICT OF ARIZONA

_____
                                       )
In re:                                 )
                                       )
STRATA TITLE, LLC          CH: 11      )    2:12-bk-24242-DPC
                                       )
1) HEARING ON JOINT MOTION OF ALLOWED  )
   ADMINISTRATIVE CREDITORS FOR ORDER  )
   AUTHORIZING PAYMENT OF PREVIOUSLY   )
   ALLOWED ADMINISTRATIVE CLAIMS FILED )
   BY RONALD J. ELLETT OF ELLETT LAW   )
   OFFICES, P.C. ON BEHALF OF STRATA   )
   TITLE                               )
                                       )
2) AMENDED MOTION TO ALLOW CLAIMS SAM  )
   PARTIES' AMENDED MOTION FOR         )
   ALLOWANCE OF ADMINISTRATIVE CLAIM   )
   AND REQUEST FOR EVIDENTIARY HEARING )
   TO DETERMINE CLAIM FILED BY K. LAYNE)
   MORRILL OF MORRILL & ARONSON PLC ON )
   BEHALF OF SAM REI, LLC              )
_____

                        U.S. Bankruptcy Court
                        230 N. First Avenue, Suite 101
                        Phoenix, AZ 85003-1706

                        November 7, 2013
                        10:29 a.m.

         BEFORE THE HONORABLE DANIEL P. COLLINS, Judge

APPEARANCES:

For Ellett Law Offices:       Ronald J. Ellett
                              ELLETT LAW OFFICES, P.C.
                              2999 North 44th Street
                              Suite 330
                              Phoenix, AZ 85018


For Strata Title:             Peter Strojnik
                              2415 E. Camelback Rd., Suite 700
                              Phoenix, AZ 85016

**AVTranz**
www.avtranz.com · (800) 257-0885

<u>APPEARANCES</u>: (Continued)

For SAM REI, LLC:                  K. Layne Morrill
                                        Steve Martori
                                        MORRILL & ARONSON PLC
                                        One E. Camelback Rd., Suite 340
                                        Phoenix, AZ 85012-1648

Proceedings recorded by electronic sound technician, Kayla Colasont; transcript produced by AVTranz.

**AVTranz**
www.avtranz.com · (800) 257-0885

1          THE COURT:  Appearances on the Strata Title matter

2   please.

3          MR. ELLETT:  Your Honor, Ron Ellett appearing on

4   behalf of Ellett Law Offices.  Also present from my firm is

5   Mr. Scott Reynolds.

6          THE COURT:  Okay.  Very good.  Thank you.

7          MR. STROJNIK:  Good morning, Your Honor.  Peter

8   Strojnik, special counsel for Strata Title.

9          THE COURT:  Thank you, Mr. Strojnik.  Go ahead -- I'm

10  sorry.

11          MR. MORRILL:  Appearing telephonically, Layne Morrill

12  and Steve Martori the third the SAM parties.

13          THE COURT:  Mr. Morrill and Mr. Martori are you in

14  town?

15          MR. MORRILL:  I am in Oregon, Your Honor.

16          THE COURT:  Okay.  Mr. Martori.

17          MR. MARTORI:  I'm in California.

18          THE COURT:  Okay.  Very good.  Go ahead, Mr. Ellett.

19          MR. ELLETT:  Your Honor, this is an application to

20  release funds on previously approved attorney's fees awards

21  that this Court has made.  The funds currently are held by the

22  title company pursuant to this Court's orders will recall, that

23  we were able to successfully broker a deal in the Studio City

24  loss bankruptcy case which is jointly administered with this

25  case, able to bring the parties together for a settlement

1  including a discount payoff by Strata's partner in that

2  bankruptcy case.  And as a result of the settlement bringing in

3  a sale which we had a higher and better bid that appeared we

4  were able to produce approximately $200,000 that is leftover

5  for payment of claims.  It's actually $208,000, Your Honor.  We

6  have filed in the Studio City case just recently a request to

7  pay a broker's claim of $36,000 that we do not need to address

8  today.  We're simply carving that out for the Court to make its

9  rulings on the appropriateness of that claim.  It represents a

10 settlement.

11          THE COURT:  When did you file that?

12          MR. ELLETT:  We filed that yesterday.  We did --

13          THE COURT:  I'm not seeing anything filed yesterday.

14 There was something --

15          MR. ELLETT:  in the --

16          THE COURT:  -- filed today which is --

17          MR. ELLETT:  -- on the --

18          THE COURT:  -- the third application which I think is

19 for you.

20          MR. ELLETT:  Right, we filed that in the Studio City

21 loss --

22          THE COURT:  Oh, of course.

23          MR. ELLETT:  -- bankruptcy --

24          THE COURT:  Of course.  I'm sorry.

25          MR. ELLETT:  -- because it is a Studio City loss

1   claim.  And if get any objections to that we'll let Your Honor

2   know.  But the bottom line is after we carve out for that

3   particular claim there's $172,000 that waterfalls over to the

4   Strata bankruptcy.

5           THE COURT:  From Studio City though.

6           MR. ELLETT:  What's that?  From the Studio --

7   entirely from the sale of a -- Studio City's only piece of its

8   only asset, a 20-acre parcel of real estate.  So we have

9   $172,000 there today.  We have received only one objection to

10  the release of these proceeds and that is from the SAM parties.

11  And the SAM parties have asserted that they have an

12  administrative claim.  The SAM parties brought a arbitration in

13  a post-petition arbitration proceeding where they were awarded

14  attorney's fees against Santerra and against John Lupypciw.

15  But the arbitrator specifically provided that there was no

16  award of attorney's fees against Strata Title, the Debtor in

17  this case.

18          THE COURT:  I've seen the AAA award.  Not very

19  flattering for Mr. Lupypciw but he was very careful in

20  footnotes or footnote number three to steer clear of the Strata

21  bankruptcy.

22          MR. ELLETT:  Right, and also in the specific award he

23  makes it very clear and we cited that in our reply that there

24  is no award against Strata, against my client whatsoever.  He

25  also provided in his order that the award was in full and final

1 satisfaction of the SAM parties' claims.

2          Having not got an award against my client they are

3 now coming back and asking this Court to give them the award of

4 attorney's fees that they didn't get.  Res judicata bars that.

5 They do not get a second bite at the apple.  They got their

6 opportunity to proceed.  They also based their administrative

7 claim on your ruling denying them any attorney's fees when you

8 dismissed the adversary.  The -- you will the Court will recall

9 the adversary was dismissed at the time Mr. Morrill on behalf

10 of the SAM parties was attempting to enforce an unenforceable

11 ipso facto clause.  We filed an adversary on it.  They filed a

12 motion for determination on whether or not the ipso facto

13 clause was unenforceable or forcible and for some other relief.

14 You denied their motion.

15          But in denying their motion you also ruled that our

16 adversary was rendered moot because you had now ruled that the

17 clause was unenforceable.  You then dismissed our adversary.

18 You have the discretion to not award us attorney's fees in that

19 action and you did not award us attorney's fees.  You also had

20 the discretion not to award them attorney's fees and you did

21 not award them attorney's fees.  That matter's resolved.

22          So we have an administrative claim that is now based

23 on two matters that have been fully and finally resolved with

24 no award to the SAM parties against Strata Title.  It's res

25 judicata. The only argument that I anticipate that Mr. Morrill

1 may make about res judicata is that he may claim well I was

2 stayed at least as it relates to the arbitration proceeding. I

3 had some stay that prevented me from bringing my claims. That

4 argument will not fly. If he has an administrative claim it

5 has to be a post-petition claim.

6        Under the Kadjevich ruling by the Ninth Circuit a --

7 the only way to obtain an administrative claim is by a

8 post-petition claim. And I'll give the Court the cite on that.

9 It is 220 F.3d 1016, Ninth Circuit opinion and it's absolutely

10 clear. It also just follows the language of the statute and

11 common sense. If you want to have an administrative claim

12 against a bankruptcy estate that claim has to arise while the

13 bankruptcy estate's in existence after the petition was filed.

14 Now the stay stops the litigation or the bringing of any claims

15 that arise pre-petition not post-petition. If he were stayed

16 in his claims then he doesn't have an administrative claim.

17 The converse is also true. If he had an administrative claim

18 he was not stayed and he should have pursued it. And in fact I

19 think he did pursue it in the arbitration. He simply asked for

20 an award of attorney's fees. He didn't limit that award

21 request to any particular party. So I think that's res

22 judicata, Your Honor.

23        This case and the SAM parties have engaged in

24 extraordinary amount of litigation and they have succeeded in

25 obtaining from Santerra, the partnership in which Strata and

**AVTranz**
www.avtranz.com · (800) 257-0885
Case 2:12-bk-24242-DPC    Doc 308    Filed 01/22/14    Entered 01/22/14 10:24:24    Desc
Main Document     Page 7 of 33

1  the SAM parties are together, an order to purchase the only

2  asset for $4.2 million in spite of the fact that there's an

3  appraisal for $4.6.  They've done very well.  They've achieved

4  a $400,000 discount there.  On top of that as a result of being

5  in the partnership they've made hundreds of thousands of

6  dollars.  They're also getting paid in full from closing for

7  all of their attorney's fees.  There is no reason for them to

8  be allowed to continue to prolong this litigation against

9  Strata.  We're done.  There is no -- nothing further for them

10  to bring against us.

11      THE COURT:  Well at bottom what relief do you want

12  from me today?

13      MR. ELLETT:  Well, Your Honor, I think you should

14  release the funds.  I think in light of the subsequent

15  development since we filed the motion

16      THE COURT:  Release the Studio City funds.

17      MR. ELLETT:  Funds to the administrative claimants.

18  In light of the additional -- you've made an additional fee

19  award to Mr. Strojnik of approximately $13,000.  We filed an

20  additional fee application of approximately $100,000.  I think

21  what we can prudently do is release and pay 50 percent of the

22  claims that have been already approved.  And so I'm going to

23  pare back the request.

24      THE COURT:  Where are those funds though?

25      MR. ELLETT:  Those funds are currently held by the

1   title company that did the -- pursuant to your order not to be

2   released.

3           THE COURT:  That did the Studio sale?

4           MR. ELLETT:  Right.

5           THE COURT:  But we're talking about the Strata case.

6           MR. ELLETT:  Right, but the --

7           THE COURT:  What I'm not following is, why is that

8   not coming up in the Studio City case.

9           MR. ELLETT:  Because the settlement agreement

10  provided that everybody was paid out and the remaining funds

11  that were leftover belong to Strata.

12          THE COURT:  So even though it comes from the Studio

13  City bankruptcy estate the funds at the title company are

14  explicitly held for the benefit of Strata only.

15          MR. ELLETT:  That's correct with the exception I

16  think of we have an obligation to pay this claim that came in

17  and was -- has been settled.

18          THE COURT:  Out of Studio City.

19          MR. ELLETT:  Right.

20          THE COURT:  This is the 36 or whatever --

21          MR. ELLETT:  Right.

22          THE COURT:  -- you were saying.

23          MR. ELLETT:  I -- you know in just in fairness it's

24  something that hadn't been anticipated and they've agreed to

25  discount that fee down so -- but after payment of that

1  that's -- all of Studio's debts have been retired.  And we've

2  settled with Aries.  They've got the money they wanted and the

3  agreement is that's earmarked then for the Strata bankruptcy.

4          THE COURT:  Okay.  I'm with you.

5          MR. ELLETT:  Okay.

6          THE COURT:  Very good.

7          MR. ELLETT:  All right.

8          THE COURT:  Mr. Strojnik.

9          MR. STROJNIK:  Again good morning, Your Honor.  I

10 really have nothing to add to Mr. Ellett's excellent legal and

11 factual presentation.  I would like to adopt it as my own and I

12 would like to stand on the submissions that I have submitted to

13 this Court --

14         THE COURT:  Okay.

15         MR. STROJNIK:  -- unless there's any questions.

16         THE COURT:  Short and sweet.  Thank you.

17         MR. STROJNIK:  Thank you, sir.

18         THE COURT:  Mr. Morrill or Mr. Martori, which of the

19 two of you would like to start?

20         MR. MORRILL:  Mr. Martori is my client.  This is

21 Layne Morrill.

22         THE COURT:  Okay.

23         MR. MORRILL:  Your Honor, the counsel for the Debtor

24 has entirely misperceived or misarticulated the nature of our

25 administrative claim.  I think it's clear from our motion to

1   allow the administrative claim and the amended motion that we

2   filed that the basis for our claim is that Strata Title assumed

3   the operating agreement of Santerra Apartments, LLC.  As a

4   result of that assumption the operating agreement of Santerra

5   Apartments, LLC became an obligation of the estate.  As a

6   result of that any post-petition breach by the Debtor of that

7   operating agreement gives rise to an administrative claim.  The

8   petition was filed on November 6th, 2012.  All of the facts on

9   which we base on our administrative claim occurred between

10  early February 2013 and the present.  They're all post-petition

11  events.

12          The Court noted in its initial order relating to the

13  SAM parties that there were certain obligations under the

14  operating agreement of Santerra that required super majority

15  vote and that if either the Debtor or the SAM parties failed to

16  act in good faith with respect to those decisions there would

17  be a breach of the operating agreement.  That is our -- the

18  basis of our administrative claim, Your Honor, is that the

19  Debtor along with Mr. Lupypciw who was its sole member, sole

20  manager and as he testified at the arbitration hearing he was

21  Strata.  And there was -- there is nobody else but him in

22  relation to Strata.

23          The nature of our claim is that through the use of

24  this bankruptcy proceeding from February to October the Debtor

25  in conjunction with Mr. Lupypciw undertook a plan to prevent

1  any sale of the property from occurring by demanding an above

2  market price for any sale and attempting to use the bankruptcy

3  process to extort a purchase price for Strata's interest based

4  upon a price, based on an above market valuation.

5       In the arbitration the arbitrator found as a fact

6  that throughout 2012 -- or I'm sorry -- throughout 2013 the

7  value of the Santerra property has been no lower than $4.2

8  million and that Mr. Lupypciw was aware at all times of the

9  fact that the property was worth no more than $4.2 million.

10  Yet the arbitrator found Mr. Lupypciw held out for a higher

11  price and through the Debtor's counsel in this case asserted

12  that the only way the SAM parties would be "disentangled" from

13  this bankruptcy is if they bought out Strata's interest based

14  on a $4.55 million value for the property.

15      Those threats and demands have been submitted in

16  connection with prior briefing in this matter.  They are clear

17  and the arbitrator in the AAA proceeding found and reiterated

18  many times that in carrying out that plan Mr. Lupypciw breached

19  his fiduciary duties to Santerra and to the SAM parties and he

20  also breached the obligation of good faith and fair dealing

21  with respect to the operating agreement of Santerra by refusing

22  his consent to a sale at fair market value in order to use the

23  lever of the bankruptcy court proceedings to extort a higher

24  purchase price.  That theme is repeated four or five times in

25  the arbitrator's award.

1        So our claim, Your Honor, is not for an award of

2   attorney's fees against Strata.  Our claim is for all the

3   damages that were suffered by the SAM parties as a result of

4   this delay in a sale by reason of the Debtor's and

5   Mr. Lupypciw's joint assertion that the only way we could

6   disentangle ourselves from this bankruptcy was to buy out the

7   Strata interest at a value of $4.55 million.  That is the

8   nature of our claim.

9        As to the attorney's fees award that we did receive

10  against Santerra and against Mr. Lupypciw we acknowledged that

11  that will be paid not by Mr. Lupypciw but by Santerra out of

12  the sale proceeds.  Therefore, because that will be fully paid

13  there is no basis on which we could ask for double payment of

14  that obligation from Strata Title.  But we do have a right to

15  pursue our administrative claim for post-petition breach of the

16  assumed Santerra operating agreement and we believe that the

17  amount of those damages when proved will be substantial.

18       We are not asserting res judicata.  We are asserting

19  that certain findings of fact and conclusions of law in the

20  arbitration in which those issues were actually litigated

21  resulting in an award against Mr. Lupypciw of damages on direct

22  claims for breach of fiduciary duty and breach of good faith

23  and fair dealing and that certain of those findings of fact and

24  conclusions of law will preclude the Debtor from relitigating

25  those issues of fact and law under the doctrine of issue

1   preclusion or collateral estoppel.  Undoubtedly there may be
2   some additional issues that remain to be tried on the
3   administrative claim.  However, we believe that in large part
4   the doctrine of collateral estoppel will bar relitigation of
5   many of the facts and legal issues necessary to prove that
6   administrative claim.
7           THE COURT:  So Mr. Morrill, at bottom what I'm
8   hearing you say is you understand that this has to be a
9   fact-driven issue resolved by the Court at an evidentiary
10  hearing.
11          MR. MORRILL:  Absolutely, and we have asked for an
12  evidentiary hearing to resolve that.  We are not disputing that
13  the Debtor's counsel and special counsel are entitled to their
14  fees.  The only thing that we don't want to happen is to have
15  them get paid their fees and have our administrative claim get
16  zero because there are no assets left in the estate.
17          THE COURT:  Well it's not that cut and dry,
18  Mr. Morrill.  If I let some money trickle out to an allowed
19  administrative claimant I continue to have jurisdiction over
20  them to disgorge if it turns out that there's not sufficient
21  money at the end of the day to fully pay all administrative
22  claims.
23          MR. MORRILL:  Well --
24          THE COURT:  So I guess the real question is is there
25  any sense from your side that if I let some money go to

1  Mr. Strojnik and some money to go to Mr. Ellett that there's

2  any danger ever of them not being able to fully disgorge it if

3  it ever came to that.

4          MR. MORRILL:  Your Honor, I have absolutely no way of

5  evaluating their financial ability to disgorge fees and I

6  wouldn't suggest that either of them lacks the integrity to

7  disgorge fees if they have the financial ability to do so.

8          THE COURT:  All right.  Is this --

9          MR. MORRILL:  But I am --

10         THE COURT:  -- your way of saying that you'd like an

11 opportunity to find out what their financials are so that they

12 could impress upon you their ability to disgorge if it ever

13 came to that?

14         MR. MORRILL:  Well that would I suppose make us feel

15 better.  The alternative -- I mean we don't want to delay this,

16 Your Honor.  We'd like to get an evidentiary hearing set sooner

17 rather than later so that whatever the funds of the estate are

18 can be paid pro rata to administrative claimants as soon as

19 possible.

20         THE COURT:  How long --

21         MR. MORRILL:  Another aspect that we haven't dealt

22 with is what other funds if any will be coming into this

23 estate.  The Debtor asserted or Mr. Ellett asserted in his

24 motion that of course there will be additional funds coming

25 into the estate.  I don't think there's anything else coming in

1  from Studio City.  As Mr. Ellett just said that's fully

2  resolved.  As far as the Tempe Tower I believe the Court ruled

3  that the Debtor has no interest, no equity interest in that

4  asset.  So I doubt that there will be any funds coming from

5  that asset.  And the only funds that will be coming from

6  Santerra are approximately $23,000 in verified capital

7  contributions made by Strata or on its behalf.

8       So there's not -- and you know I don't have all the

9  facts and I'd be happy to be proven wrong and to know that

10 there will be substantial additional funds coming into the

11 estate.  But given the fact that I don't see a prospect of

12 substantial additional funds coming into the estate I believe

13 that the better course and the more prudent course as far as my

14 clients are concerned is to move forward as quickly as possible

15 with the evidentiary hearing on the administrative claim and --

16       THE COURT:  And how quickly would you be ready for

17 that, Mr. Morrill, and how long would the trial take?

18       MR. MORRILL:  Your Honor, I think we could be ready

19 for that by late December, early January and I don't anticipate

20 that the hearing would last not more than a full day.  The

21 entire arbitration didn't last more than a day and a half.  So

22 that would be my best guess, Your Honor.

23       THE COURT:  Okay.  Understood.  Mr. Ellett, if you

24 could tell us how you would respond to the question of what

25 money's going to be in this estate by the end of the day, not

1 today -- by the end of the case I should say.

2          MR. ELLETT:  Your Honor, other than the Santerra

3 money and the $23,000 that you have an order to sign that

4 Mr. Morrill just mentioned it is unclear that there will be any

5 additional funds.  We hope that the Tempe Tower appeal will go

6 our way and there may be some resolution but we're always --

7 when you're doing an appeal it's not a -- by any means a sure

8 thing.

9          THE COURT:  So there's a very real likelihood that if

10 all of the administrative expenses from your side of the table

11 are granted in full through the life of this case and there's

12 a -- an award of an administrative claim for the SAM parties we

13 will be administratively insolvent.

14          MR. ELLETT:  Correct.  That's true.

15          THE COURT:  Okay.

16          MR. ELLETT:  Can I please address a couple of the

17 other of the other points?

18          THE COURT:  Sure.

19          MR. ELLETT:  Mr. Morrill, and I appreciate his

20 candor, clarified that his claims start in early February 2013

21 and they run through October 2013.  They are on -- based on the

22 same set of facts that he tried to argue in front of the

23 arbitrator in which my client was a respondent.  Res judicata

24 applies to all claims that were brought or could've been

25 brought.

1          THE COURT:  Are you talking about your client,

2   Mr. Lupypciw?

3          MR. ELLETT:  No, my client's Strata Title.

4          THE COURT:  Well but there was a stay preventing the

5   arbitrator from doing everything relative to Strata and his

6   footnote three is pretty explicit about that that he understood

7   that to be the case.

8          MR. ELLETT:  Well I don't deny that footnote three

9   talks about a stay.  However, Your Honor, the bankruptcy stay

10  by definition only stays actions that arise pre-petition.  They

11  don't stay post-petition actions.  That's why administrative

12  claims generally are resolved in a state court proceeding where

13  you get attorney's fees or those sorts of things.  Let's talk

14  about milestones just for --

15         THE COURT:  No, administrative claims on a breached

16  executory contract come here not in a state court proceeding or

17  an arbitration proceeding.

18         MR. ELLETT:  Your Honor, I respectfully just point

19  out that they brought those claims in the arbitration

20  proceeding.

21         THE COURT:  Against Lupypciw.

22         MR. ELLETT:  The other thing I'll point out to Your

23  Honor is this, is the entire theory hinges on that we held out

24  for "an above market valuation."

25         THE COURT:  In other words that there was a breach.

1          MR. ELLETT:  That -- yes, that's --

2          THE COURT:  Something --

3          MR. ELLETT:  -- the contention.

4          THE COURT:  -- that is -- I'm sorry.

5          MR. ELLETT:  That's the contention and --

6          THE COURT:  And it's --

7          MR. ELLETT:  -- he could --

8          THE COURT:  -- not admitted by the Debtor either.

9          MR. ELLETT:  He -- and the arbitrator found that the

10    value was at all times 4.2 and that John Lupypciw knew that.

11    What the arbitrator was not allowed to see and was not told by

12    Mr. Morrill is that the only appraisal done at that time was

13    for $4.6 million on the building.  Now I don't know how a claim

14    can be brought against the estate when my opening offer is to

15    sell out at a valuation of 4.55 when I have submitted to Your

16    Honor as attached in our reply an appraisal for 4.6.  Our

17    opening offer was a discount of $50,000 off the appraised

18    value.

19          THE COURT:  But that's not something I need to

20    resolve today.  That's something that's a factually based issue

21    that you're contending one side and he's contending the other

22    and we need to try the issue.  Isn't it?

23          MR. ELLETT:  Well I think you have to get up the

24    point where you have some good faith basis.  And if we've got

25    an appraisal at 4.6 I don't know how we can be sued when we're

1  offering 4.55 as our initial offer to liquidate that asset and

2  which we offered -- let's liquidate it at 4.55.  I don't --

3  that doesn't -- makes no sense to me that you can even bring

4  that claim.

5      THE COURT:  Again, I can't judge that today.  That's

6  another issue for evidentiary hearing isn't it?

7      MR. ELLETT:  I don't know that it is, Your Honor,

8  because I think you've got get over the fact that the appraisal

9  exists, that we have it, that it's filed in there.  And I think

10 that precludes a claim that the other side's acting in bad

11 faith when they have an appraisal that's higher than what their

12 offer was.  I think that's just an absolute -- how can you be

13 sued when you're relying on an appraisal?  That doesn't make

14 any sense to me at all.

15     THE COURT:  So let's do this.  Let's hear from you

16 about how quickly you would be ready for this trial on their

17 administrative claim which arises they claim out of the breach

18 of the executory contract that's assumed in this case.

19     MR. ELLETT:  I'll tell you what the fight I think

20 will be about legally is Mr. Morrill wants to use the factual

21 findings he got in the arbitration against Strata.

22     THE COURT:  I understand that and it occurred to me

23 that what we ought to do is have both sides brief the issue in

24 advance of the trial but then roll into the trial unless the

25 parties think that we ought to address that narrow legal issue

1  first.

2        MR. ELLETT: I think it's an issue that needs to be

3  addressed but it will simply point out that giving res judicata

4  effect and when you give a --

5        THE COURT: Well he calls it collateral estoppel not

6  res judicata.

7        MR. ELLETT: No, there's a --

8        THE COURT: It can't be res judicata because Strata

9  was not in the case for that purpose.

10        MR. ELLETT: That's fine with me if that's going to

11  be the conclusion of the Court that Strata was not in the case

12  for that purpose. I just don't think he can argue it both ways

13  that we were in for purposes of being stuck with findings but

14  not with -- for the ultimate conclusion when there was no award

15  against us.

16        THE COURT: Well I don't mean to put words in

17  Mr. Morrell's mouth but I think what he's essentially saying is

18  that the arbitrator found that Lupypciw treated Strata as if it

19  was his alter ego but that's not to say that it was. He didn't

20  find that in fact it was his alter ego --

21        MR. ELLETT: That --

22        THE COURT: -- or that Strata and Lupypciw are one

23  and the same. That's something that would be reserved in this

24  bankruptcy court. That's how I read Mr. Lassiter's opinion.

25        MR. ELLETT: All right. Well, Your Honor, if you

1   want briefing on these issues we'd also like to brief the issue

2   of res judicata as well. The Ninth Circuit case in <u>Olsen</u> talks

3   about the fact that all claims that were or could've been

4   brought are res judicata. If there was any confusion about

5   whether or not these post-petition claims were stayed they

6   could've come and clarified that because post-petition claims

7   are never stayed by the automatic stay. It just doesn't

8   happen.

9         THE COURT: The administrative claims are decided by

10  bankruptcy courts not by AAA arbitrators.

11        MR. ELLETT: But an award of damages and attorney's

12  fees -- the award of the underlying cause of action is normally

13  determined by a Court. In other words, administrative

14  claims -- you're absolutely right that administrative claims

15  for professionals or for people who bring a substantial benefit

16  to the estate are determined by the Court. That's absolutely

17  true. They're trying to get in on a very narrow judicially

18  created exception where if there's a tort that occurs that you

19  get to bring that claim in. And normally what happens is that

20  torts are adjudicated by a separate court and then the

21  bankruptcy court looks at the ruling and says well is this an

22  administrative claim or not. That -- that's the normal

23  process. And the -- in this particular instance when you look

24  at the arbitrator's ruling there's no administrative claim

25  here. They now want to redo the action to try and get some

1    kind of an award and then have you rule whether or not it's an

2    administrative claim.  I don't think they get to do it that

3    way.

4            THE COURT:  So here's the two options.  Let's hear

5    your view of which would be more efficient here.  Would it be

6    better to first address the legal question of whether there is

7    a collateral estoppel effect from Mr. Lassiter's opinion and to

8    what degree does it apply in the context of the administrative

9    claim sought by the SAM parties.  Or should we have the parties

10   brief that and then when we're ready to talk about it go

11   straight to the factual trial on their alleged breach of the

12   administrative -- alleged breach of the executory contract

13   which they say creates an administrative claim.  In other

14   words --

15           MR. MORRILL:  Your Honor, this --

16           THE COURT:  No, Mr. Morrill.  Hold on.  I'm asking

17   Mr. Ellett the question first.

18           MR. ELLETT:  Can I --

19           MR. MORRILL:  Oh, okay.  I'm sorry.

20           MR. ELLETT:  -- just quickly --

21           THE COURT:  Yes.  So it's a question of whether we do

22   it in one piece or two pieces.

23           MR. ELLETT:  I -- the -- we think it should -- that

24   this should be briefed first and the Court rule because that's

25   going to determine that exactly how we -- you know what

1    evidence we're bringing in the case, what witnesses to --

2           THE COURT:  But I understand that briefing is only on

3    the very narrow legal issue about whether anything that

4    happened in the arbitration proceeding has some preclusive

5    effect in this Court, whether you call it collateral estoppel

6    or res judicata.  Is that the narrow legal issue we're teeing

7    up?

8           MR. ELLETT:  We're -- yes, I think so.  I -- but I --

9    yes, but I think what you'll end up doing is you'll get into

10   specific -- well was this -- is this particular ruling

11   collateral estoppel or not.  And if collateral even applies you

12   still get down to the general proposition that a Court's dictum

13   is not preclusive in any instance.  And the arbitrator here

14   ultimately ruled.

15          THE COURT:  You don't need to give me argument now.

16   I'm trying to set the schedule to have that argument.

17          MR. ELLETT:  Okay.

18          THE COURT:  And so I'm hearing your vote for let's do

19   this in two pieces, let's --

20          MR. ELLETT:  Yes.

21          THE COURT:  -- get to the legal issue first.  How

22   quickly can that be briefed on your side?

23          MR. ELLETT:  Yes.

24          THE COURT:  How quickly?  Who has the phone on?

25          THE CLERK:  I think it's Mr. Brown's in his briefcase

1  and he just left the courtroom, Judge.

2           THE COURT:  Okay.

3           THE CLERK:  I'll take his briefcase out to him.

4           MR. ELLETT:  Thirty days, Your Honor.

5           THE COURT:  Okay.  And do you want to just have

6  simultaneous briefs and then we have a hearing right after that

7  or are you looking to have a response as well?

8           MR. ELLETT:  We'd like to respond.

9           THE COURT:  Okay.  So simultaneous briefs and then

10  simultaneous responses followed by oral argument.

11          MR. ELLETT:  Correct.

12          THE COURT:  So 30 days for the briefing of the

13  initial brief and how long for the response, two weeks?

14          MR. ELLETT:  Twenty days.  Although I -- you know 30

15  days is going to put us right into the holiday season and the

16  20 days after that is not really 20 days because of the

17  holidays.

18          THE COURT:  So something along the lines of have the

19  briefs in by December 6th.  It's a Friday.  Have the responses

20  sometime by the end of the year and in the very first part of

21  the year have the oral argument.  Fair enough?

22          MR. ELLETT:  Yes, I think we'd also like to submit

23  along with the collateral estoppel brief essentially a motion

24  for summary judgment at the same time.

25          THE COURT:  On what issue?

1          MR. ELLETT:  Their primary and principle contention

2   is that the estate was holding out for an unreasonable price by

3   offering 4.55 million and we're going to attach the appraisal

4   and say it is not unreasonable for the bankruptcy estate to

5   offer to liquidate the asset to them for 4.55 million when

6   there's an asset -- for an appraisal for 4.6.

7          THE COURT:  So in other words that there cannot be a

8   breach under that scenario.

9          MR. ELLETT:  Under that scenario.  The -- his

10  contention that we offered 4.55 million to resolve this is

11  absolutely correct.  That was our opening offer.  He likes to

12  say that I couched it in terms of saying if you want to

13  disentangle yourself from this bankruptcy, but I was simply

14  replying to email that said we want to disentangle ourselves

15  from the bankruptcy and you need to work with us.  And I wrote

16  back and said well if you want to disentangle yourself pay us

17  4.55.  This is easy.  That's the email exchange.  It definitely

18  happened.  That's not disputed.  The fact that the appraisal is

19  there is not disputed.

20          So I think it's summary judgment --

21          THE COURT:  I don't need argument on -- I don't need

22  argument on that issue.

23          MR. ELLETT:  That's what I'm saying, why we want to

24  brief summary judgment on it.

25          THE COURT:  Okay.  So rather than call it a summary

1    judgment why don't we just call it your brief on two topics,

2    the preclusion issue and the -- there hasn't been and can't be

3    a breach issue.

4            MR. ELLETT:  Okay.

5            THE COURT:  All right.  And then have that filed by

6    Friday, no later than Friday, December 6th and have any

7    responses filed by December 31.  I'm not putting this in stone

8    yet until I talk to Mr. Morrill.

9            Mr. Morrill, what do you think about the briefing

10   first followed by a trial if need be?

11           MR. MORRILL:  Well, Your Honor, I suspect that there

12   are certain issues -- even if we fully prevail on our

13   collateral estoppel position there will be certain additional

14   items that would need to be addressed at trial.  And if we

15   don't prevail on our collateral estoppel position all of the

16   issues would need to be determined at trial.  So it seems to me

17   that we're creating a system here that will take longer to

18   resolve and I understand that Debtor's counsel and Debtor's

19   special counsel would like to get paid sooner rather than later

20   so --

21           THE COURT:  Well let's not talk about the fee payment

22   yet.  Let's talk about the process to get to the conclusion of

23   whether you have an administrative claim.  I'm just trying to

24   set that up.  And it does --

25           MR. MORRILL:  No, I understand that but my point,

1  Your Honor, that I was intending to make is that there's going
2  to have to be a trial in any event.  The trial will be shorter
3  if we prevail on our collateral estoppel but it will still have
4  to occur.
5       THE COURT:  Understood.  So I'm willing --
6       MR. MORRILL:  So --
7       THE COURT:  -- to set a trial date --
8       MR. MORRILL:  -- why not schedule the trial --
9       THE COURT:  -- as well today.
10      MR. MORRILL:  -- why not schedule the trial to occur
11  in early January and it will either be a shorter trial or a
12  longer trial depending on how the Court rules on the collateral
13  estoppel issue.
14      THE COURT:  That's exactly what I just said when you
15  were talking.  So let's hear your view of whether we ought to
16  have briefs in 30 days or some other schedule and then have
17  replies and only have two rounds of briefing, the original
18  briefs simultaneous and then replies simultaneous.
19      MR. MORRILL:  Your Honor, I'm fine with that aspect
20  of it.  I would point out just one quick point for
21  clarification as it relates to the second issue brought up by
22  Mr. Ellett.  And that is the appraisal that he is referring to
23  was submitted by Mr. Lupypciw as an exhibit at the arbitration
24  hearing.
25      THE COURT:  Okay.  I don't want to talk about the

1  facts in that.  I'm setting the schedule, Mr. Morrill.  Okay.

2          MR. MORRILL:  Okay.

3          THE COURT:  So I'm hearing you agree that opening

4  briefs are going to be simultaneously filed no later than

5  Friday, December 6th.  I'm hearing there are two issues on the

6  briefing, the first issue being whether there's any preclusive

7  effect at all from what happened in the arbitration proceeding

8  and secondly Mr. Ellett is going to want to also talk about

9  whether there could even be a breach of the executory contract

10 because of this appraisal issue.

11         Is there any other legal issue, Mr. Morrill, that

12 needs to be on the table for the parties to be briefing?

13         MR. MORRILL:  I don't believe so, Your Honor, and I'm

14 fine with that method and that time table.

15         THE COURT:  Okay.  Then the responses are all due no

16 later than December 31.

17         MR. ELLETT:  Your Honor, on the response that's

18 running right over the holidays.  Could we just back that off a

19 week and

20         THE COURT:  You could do it anytime the week of the

21 9th, the 16th, the 23rd, the 30th.  You've got a long time to

22 do your response.  I mean you've got almost a month to do the

23 response.

24         MR. ELLETT:  And I've got a -- I know I've got an

25 arbitration and I've got some other things that are already

1   packed in the middle of December.  So this is -- we're adding

2   on to the workload that's already there.  I'm just asking for

3   an extra week.

4           THE COURT:  All right.  January 10 is a Friday.  Is

5   that all right, Ms. Vaughn.

6           THE CLERK:  Yes, sir.

7           THE COURT:  Okay.  The responses will be due no later

8   than January 10.  And then let's look at the week of -- well

9   the following week, sometime say Wednesday or Thursday of the

10  following week for an hour oral argument.

11          THE CLERK:  Okay.  We can do Thursday, January 16th

12  at 11.

13          THE COURT:  So January 16 at 11 will be the oral

14  argument on these yet to be filed briefs.  And then I'm

15  agreeing with Mr. Morrill that we ought to also set the trial

16  date.  And it seems to me that we ought to do that sometime at

17  the very end of January.  And I'm hearing from Mr. Morrill that

18  it can't possibly take more than a day.  We'll see.

19          THE CLERK:  We can do January 27th at 9, 10.

20          THE COURT:  Okay.  So January 27 at 9:00 will be the

21  trial date.  What day of the week is that?

22          THE CLERK:  That's a Monday.

23          THE COURT:  The joint pretrial statement will be due

24  the Thursday prior.  What's that date?

25          THE CLERK:  It is the 23rd.

1          THE COURT:  January 23 is the joint pretrial and it

2    must be joint.  The intent of the Court is to rule from the

3    bench on January 16 on the legal issues in case you're worried

4    that there's going to be another advisement that makes you

5    puzzled as to what you're actually going to be trying.

6          MR. ELLETT:  Okay.

7          THE COURT:  Okay.  Mr. Morrill, any questions about

8    the schedule?

9          MR. MORRILL:  No, Your Honor.

10          THE COURT:  Mr. Ellett or Mr. Strojnik, any questions

11    on the schedule?

12          MR. STROJNIK:  No, Your Honor.

13          THE COURT:  Okay.  So now let's talk about the

14    payment of fees.  Again, what I've indicated is that if you're

15    capable of disgorging everything that is paid to you then I'm

16    inclined to let some money go out the door today.  But as a

17    price to have that I think that you need to persuade

18    Mr. Morrill that there is no doubt that whatever happens down

19    the road you will be good for the disgorgement if it ever comes

20    to that.

21          So on the one hand I'm giving you the option,

22    Mr. Ellett and Mr. Strojnik, to go to Mr. Morrill to say here's

23    why we're good for it or in some way persuade him that yes,

24    you're good for it if you ever do have to disgorge or we simply

25    wait to see how this trial goes and talk about payment at that

1  time.

2          Mr. Ellett.

3          MR. ELLETT:  Well I have a whole different set of

4  considerations.  If I get paid this money I have to pay taxes

5  on it.  And then when I disgorge it it may be offset in a year

6  where I don't know what the tax situation is.  So I don't want

7  to get into having to tell Mr. Morrill what my finances are and

8  I do not want to get into a situation where you award money and

9  turn around and take it back.  I don't --

10          THE COURT:  But --

11          MR. ELLETT:  -- want that.

12          THE COURT:  -- but it seems to me if Mr. Morrill's

13  correct about having a significant damage claim that he can

14  pursue as an administrative claim that we will have an

15  insolvent estate and there will likely be a disgorgement.  And

16  so it makes me nervous that letting the money go out the door

17  without an assurance in some fashion that the disgorgement can

18  be repaid.

19          MR. ELLETT:  We never made a request that -- I never

20  made a request to have it released if there was going to be

21  this what I consider to be a very weak administrative claim

22  hanging out there.  So if it's not resolved I'm not asking for

23  a distribution.

24          THE COURT:  Okay.  Let's hear if Mr. Strojnik agrees

25  for his own personal distribution.

1          MR. STROJNIK:  Your Honor, conditional payment is no

2   payment at all.  If I got paid today I'd have to put it in the

3   trust account.  I wouldn't be able to reach it.  So I'll wait.

4          THE COURT:  Okay.  Very good.  Mr. Morrill, you've

5   heard that the money's not going anywhere at this point.  It's

6   going to remain in the escrow account and I think we're on a

7   relatively quick path to get to the final decision here.

8          Any further question on that, Mr. Morrill?

9          MR. MORRILL:  No, Your Honor.

10         THE COURT:  Mr. Ellett, anything further?

11         MR. ELLETT:  No, Your Honor.

12         THE COURT:  Mr. Strojnik?

13         MR. STROJNIK:  No, Your Honor.

14         THE COURT:  All right.  We're adjourned.  Thank you.

15      (Proceedings Concluded)

16

17

18

19      I certify that the foregoing is a correct transcript from

20   the record of proceedings in the above-entitled matter.

21

22  Dated: January 22, 2014                *Harold Ferguson*
                                    AVTranz, Inc.
23                                  845 North 3rd Avenue
                                    Phoenix, AZ  85003
24

25