Peter Strojnik, 6464
2415 East Camelback Road, Suite 700
Phoenix, Arizona 85016
Telephone: 602-524-6602
E-mail: *ps@strojnik.com*
Attorney for STROJNIK P.C.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re:<br><br>STRATA TITLE, LLC,<br><br>                              Debtor.<br><br>SAM REI, LLC, an Arizona limited liability company; and SAM III, LLC, an Arizona limited liability company,<br><br>                             Plaintiffs,<br>v.<br><br>THE CONTINENTAL GROUP, LLC, an, Arizona limited liability company; ELLETT LAW OFFICES, P.C., an Arizona professional corporation; and STROJNIK, PC, an Arizona professional corporation,<br><br>                             Defendants. | Chapter 7<br><br>No.: 2:12-bk-24242-DPC<br><br>ADV No.: 2:14-ap-00319<br><br>**NOTICE OF FILING**<br>**and**<br>**DECLARATION OF PETER STROJNIK TO AID THE COURT IN RESOLUTION OF CURRENT ISSUES** |

Undersigned files his Declaration under the Penalty of Perjury to aid the Court in the resolution of the current substantive issues in the above captioned adversary proceeding and to aid the Court in the resolution of the Order to Show Cause dated November 25, 2014, Doc 512.

The Declaration is appended hereto as Addendum A. It is supported by Exhibits 1-15.

RESPECTFULLY SUBMITTED this 8th day of December, 2014.

**PETER STROJNIK**

_____
By: Peter Strojnik
Attorney for Strojnik, P.C.

The original e-filed with the Court and distributed to interested parties though the PACER system.

/s/

# ADDENDUM A

# DECLARATION OF PETER STROJNIK UNDER THE PENALTY OF PERJURY

I make this declaration under the penalty of perjury. This information is provided for the benefit of the Parties and for the benefit of the Court. It is based on my best memory and belief.

## INTRODUCTION

On or about November 25, 2014 I was called to testify regarding a dispute in Case No. 2:12-bk-24242-DPC (In Re Strata Title) and Adversary No. 2:14-ap-DPC (SAM REI v. The Continental Group et al). It was my impression that I would testify to a meeting between SAM Parties and Strata Title regarding a settlement of issues between them. My testimony broadened in scope and I was asked about my representation of Strata Title. My testimony was further broadened by a question from the Bench whether I billed Stata Title for my attendance at a meeting which I believe occurred on or about May 30, 2013. I advised the Bench that I did not. This was a correct answer. Because of the severity of the indictment, however, I reviewed my time billings and confirmed that my answer was correct. I was also queried by the Bench whether my Declaration dated March 14, (Doc 67-2) was accurate. I responded that it was. Again, I reviewed the relevant portions of the file to make sure that my answer was accurate. It was.

The purpose of this Declaration is to aid the Court with respect to the substantive issues raised in the 2:14-ap-00319 adversary proceeding and in the consideration of the Order to Show Cause, (Doc 512) scheduled for December 11, 2014. For this purpose, I state as follows:

1. I am a lawyer practicing primarily in Phoenix, Arizona.

2. My practice is limited almost exclusively to civil commercial litigation matters.

3. If a matter outside my area of interest is brought to me, I refer it to counsel with expertise in that area. Thus, for example, when it appeared that Strata Title needed a bankruptcy attorney, I referred it to Mr. Ellett.

4. I am not a bankruptcy attorney. While I have appeared in bankruptcy court in the past, it has been primarily in adversary proceedings relating to civil litigation matters.

5. It is not my normal practice to appear as special counsel for a debtor in bankruptcy matters.

6. Where, as here, I appear as special counsel, I rely on the bankruptcy counsel on matters relating to the bankruptcy process and bankruptcy procedure.

7. I have been counsel for Mr. John Lupypciw since May of 2012.

8. On **February 6, 2013**, I filed a Notice of Appearance for John Lupypciw in Case Number 2:12-bk-24242 and Case No. 2:13-ap-00057. In it, I clearly identified myself as representing Mr. Lupypciw. Exhibit 1.

9. On Friday, **February 8, 2013**, I received a Verified Complaint captioned *Security Title Agency v. Tempe Tower, BMC Capital, John Lupypciw and Davis Design Solutions, LLC*, along with the Application for Temporary Restraining Order and Summons on Mr. Lupypciw in the Maricopa County Superior Court case no CV 2013-001159. Exhibit 2.

10. On Saturday, **February 8, 2013**, I circulated the Verified Complaint and related papers to Mr. Lupypciw with a copy to Mr. Ellett as counsel for Strata Title. Exhibit 3.

11. Neither Strata Title nor Mr. Lupypciw in his capacity as a member/manager of Strata Title was a Defendant in the suit. While Mr. Lupypciw's capacity was not clearly

defined, it appeared that he was sued for actions taken as the manager of Tempe Tower, not Strata Title. *Id.*

12. The Complaint arose out of a refinance of certain property on West 5th Street in Tempe, Arizona.

    a. The refinance escrow was handled by Security Title. The escrow refinanced a Tempe Tower loan to Milestone with another loan from RLS Capital.

    b. The escrow closed and the Milestone loan was paid off. Approximately $210,000.00 was distributed into a Tempe Tower account.

    c. Prior to close, Mr. Lupypciw provided to Security Title a copy of the Tempe Tower Operating Agreement which provides that the refinance agreement had to be approved by Pure Country Estates. During the discover process in the Security Title Litigation, Security Title admitted[1]:

    > 21. Admit that with respect to the refinance escrow which is the subject matter of the litigation in CV2013-001159 you had in your files a copy of the Tempe Tower's Operating Agreement.
    >
    > ADMIT __X__   DENY _____

    d. Security Title also admitted that it "was not cognizant of the provisions contained in the Tempe Tower's Operating Agreement:

---

[1] Available upon request.

> 23. Admit that you were not cognizant of the provisions contained in the Tempe Tower's Operating Agreement requiring all members to consent to the refinance at the time of the refinance transaction.
>
> ADMIT __X__   DENY _____

13. At close of escrow, the Milestone Loan was paid off from the proceeds of the RLS refinance loan.

    a. The Deed of Trust held by Milestone as security for the Milestone Loan was discharged by the payoff of the Milestone Loan.

    b. Following the close of escrow, Pure Country Estates, a member of Tempe Tower, LLC, alleged to Security Title that Mr. Lupypciw did not have the authority to refinance the Milestone loan; whether Pure Country's allegation is true remains subject to the Superior Court litigation.

    c. As a result of Pure Country's demand, Security Title attempted to extra-judicially rescinded the refinance. Milestone (and 2 minor payees) paid back the funds they had received from escrow and paid it to RLS Capital.

    d. In my opinion, Milestone's decision to pay back the proceeds from escrow did not resurrect the Milestone Deed of Trust. *See* A.R.S. §33-805 (providing that a deed of trust "may be executed as security for the performance of a contract"). *See also* A.R.S. § 33-805(F). ("If the trust deed is paid in full … the trustee shall record a cancellation of the notice of sale".)[2]

---

[2] The "Arizona's Deed of Trust Act (the Act), A.R.S. §§ 33–801 to 33–821, first authorizes deeds of trust and then provides a detailed and comprehensive framework for carrying out non-judicial foreclosures." *In re Krohn*, 203 Ariz. 205, 215 52 P.3d 774, 784 (2002). "The Act is a comprehensive set of statutes governing the execution and operation of deeds of trust." *In re Bisbee*, 157 Ariz. 31, 32 754 P.2d 1135, 1137 (1998). The Arizona Supreme Court has been clear that "[t]he Deed of Trust statutes ... strip borrowers of many of the protections available under a mortgage. Therefore, lenders must strictly comply with the Deed of Trust statutes, and the statutes and Deeds of Trust must be strictly construed in favor of the borrower." *Patton v. First Federal Sav. and Loan Ass'n of Phoenix*, 118 Ariz. 473, 477, 578 P.2d 152, 158, (Ariz. 1978)

14. Upon information and belief, Security Title was aware of the Arizona Supreme Court decision in Burkons *v. Ticor Title,* 168 Ariz. 345, 352, 813 P.2d 710, 717 (1991) (holding that "escrow agent must be cognizant not only of the escrow instructions but of the provisions contained in the documents that are deposited in escrow" and that failure to be "cognizant…of the provisions contained in the documents that are deposited in escrow" constitutes a breach of duty).

15. In its Rule 30(b)(6) deposition, Security Title admitted that the reason for its extra-judicial rescission was to limit its own liability[3]:

```
     Q     Okay.  So the reason why you tried to unwind the
     escrow is to cover up Security Title's mistake?
           MR. ROSE:  Objection.
     A     Not cover up.  Anytime we have an escrow that's a
     problem, we try to stop all of the checks.  We try to stop
     pays, get wires back just so we can review it and see where
     the problem came.  I think that the reason for unwinding is
     to stop -- lower the liability out there.
     Q     (By Mr. Stjojnik) Whose liability?  Security
     Title's?
     A     Security Title, mine.  It's hard to get money back
     from people.
     Q     Right.  The reason why you tried to unwind the
     transaction was to limit Security Title's liability,
     correct?
     A     Yes.
```

16. On **February 12, 2013**, I appeared in 2:12-bk-24242-DPC and 2:13-ap-00057 in person at a hearing before Judge Collins and identified myself as Counsel for Mr. Lupypciw. Exhibit 4.

---

[3] Transcript available upon request.

17. On **February 19, 2013**, I again appeared in person at a hearing before Judge Collins 2:12-bk-24242-DPC and in 2:13-ap-00057. Again, I identified myself as counsel for Mr. Lupypciw. Exhibit 5.

18. In the meantime, Milestone attempted to exercise its rights under the Deed of Trust that had been satisfied by virtue of the payoff of the Milestone Loan.

   a. It was my opinion that once the Milestone Loan had been paid in full – despite subsequent refund of the money back to Security Title – the original Deed of Trust was no longer valid. The statute is clear on this point. See A.R.S. § 33-805(F).

   b. I expressed my opinion to Mr. Ellett in his capacity as counsel for Strata Title, LLC. We jointly agreed that Strata Title, as a member of Tempe Tower, would benefit greatly by a lawsuit seeking injunctive relief against the Milestone's Trustee's Sale and a Declaratory Judgment Action confirming my opinion that the Milestone Deed of Trust had been discharged by operation of law.

19. During several days prior to **March 14, 2013**, I discussed with Mr. Ellett my appointment as special counsel for the bankruptcy estate in this matter. Mr. Ellett asked me whether I or my firm were creditors of Strata Title.

20. I responded that I am not a creditor. In connection with this question:

   a. I confirm that I was not a creditor.

   b. I further confirm that I have searched my computer database for any agreement with Strata Title. There is none.

c. I further confirm that I have searched my computer database for any billing to Strata Title. There is none (other than in connection with representation as court appointed special counsel).

d. I further confirm that I never made a claim of any kind (other than in the matter in which I was appointed special counsel) against Strata Title.

e. I further confirm that I have learned that Ms. Lupypciw listed me as a "creditor" in his bankruptcy petition. This listing is inaccurate and false. I do not vouch for Mr. Lupypciw's veracity under any circumstances.

21. I am aware that 11. U.S.C. § 327(c), specifically provides that *even if* I were Strata Title's creditor, which I was not, this would not be a disqualifying fact "unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest".

22. I had no motive to misrepresent my status as a non-creditor. Had I stated that I *was* a creditor, this would have been an untrue statement of fact.

23. Mr. Ellett also inquired whether I represent any interest adverse to Strata Title with respect to the proposed lawsuit by Strata Title against Milestone. I responded that I did not. In connection with this question, I reaffirm the following:

a. I did not have any adverse interest and represented no adverse interests to the interests of Strata in connection with the proposed representation.

b. My representation of Mr. Lupypciw in the *Security Title* case was not adverse to Strata Title. Strata Title was not involved in that matter.

c. The interests of Mr. Lupypciw and Strata Title were aligned in the proposed lawsuit against Milestone.

d. My representation of Mr. Lupypciw was well known to the Court and the Parties through my disclosures in Exhibits 1, 2, 3, 4 and 5.

  e. There was no conflict of interest between my representation of Mr. Lupypciw in the *Security Title* matter and Strata Title in the *Milestone* matter. See E.R. 1.7.

24. As a result of the discussions, Mr. Ellett presented me with the Declaration of Peter Strojnik, Doc 67-2, which I signed. Exhibit 6.

25. On **March 16, 2013**, Mr. Ellett filed Application by Debtor for Authority to Employ Special Counsel. (Doc 67, Exhibit 7)

26. Appended to the Application was the [proposed] Verified Complaint. (Doc 67-1, Exhibit 8)

27. I am unaware of any objections to my appointment. As indicated above, since Strata Title's schedules incorrectly listed me as a "creditor" – which I was not – any creditor could have objected and I the matter would have been resolved. *See* 11. U.S.C. § 327(c).

28. In fact, in Mr. Lupypciw's personal bankruptcy petition dated July 1 2013, Mr. Lupypciw stated that I was *his personal* creditor (Exhibit 9):

| Peter Strojnik<br>Strojnik, P.C.<br>2415 E. Camelback Rd., Ste. 700<br>Phoenix, AZ 85016 | Peter Strojnik<br>Strojnik, P.C.<br>2415 E. Camelback Rd., Ste. 700<br>Phoenix, AZ 85016 | Legal Services | | 150,000.00 |
|---|---|---|---|---|

29. On **April 2, 2013**, I advised the Court that I represented John Lupypciw in a forcible entry and detainer action filed by Tempe Tower against Mr. Lupypciw on March 13, 2013, Maricopa County Superior Court Number CV2013-052056.

  a. On April 2, 2013, I advised the Court that I represented John Lupypciw in a Forcible Entry and Detainer Action. See Notice of Removal, Doc 1, Case No. 2:13-ap-00387-DPC.

b. On April 3, 2013, I filed the Answer in that matter as attorney for John Lupypciw.

c. On May 9, 2013, the Court entered an Order of Abstention. Doc. 12, 2:13-ap-00387-DPC.

30. Following my appointment as special counsel on March 18, 2013 (Doc. 70), I received, on Saturday, **April 6, 2013**, Tempe Tower's cross-claim against John Lupypciw in the *Security Title* matter. (Exhibit 10)

31. On the same day, that is, Saturday, **April 6, 2013**, I forwarded the Cross-Claim to Mr. Ellett. (*Id.*)

32. On Monday, **April 8, 2013**, the Cross-Claim was disclosed to the Court by Mr. Craig Ganz. (Doc. 92, Exhibit 11 through 11-5)

33. The Cross-Claim, Doc 92-1 (Exhibit 11-1), disclosed to the Court on **April 8, 2013**, provides a verified, exhaustive set of allegations against Mr. Lupypciw spanning 33 pages of detail and 236 individual allegations and supported by exhibits. *See* Doc 92-1 through 92-5, Exhibits 11 through 11-5.

34. On **April 10, 2013**, I appeared in person at a hearing before Judge Collins and identified myself as counsel for Mr. Lupypciw. Exhibit 12.

35. On **May 7, 2013**, I appeared at a consolidated hearing on various matter in person before Judge Collins, I again disclosed my status both as a lawyer for Mr. Lupypciw and special counsel for Strata Title. Exhibit 13.

36. On **May 9, 2014**, I filed Special Counsel's First Fee and Costs Application. Exhibit 14.

a. Under section titled Factual Background of Action Involving Special Counsel I related the factual background of the action in individually marked paragraphs 1-27.

b. Under the section titled Services Performed and Costs Incurred, I summarized, in individually numbered paragraphs, the services performed and costs incurred.

c. In Addendum A I provided an accounting of time spent on the matter, the subject matter for which the fees were incurred and the total number of hours expanded (93.1) and the total amount of fees earned ($41,895) and total costs incurred of $945.00

d. I reviewed the First Fees and Costs Application for accuracy. While this matter was filed 19 months ago, I no longer have the memory of each event described in Addenda A and B. However, I did find one typographical error: On page 6 of 14, line 23, the statement is made that "the total amount of fees earned to date is $28,035.00. This error is corrected on page 7 of 14 at lines 7 and 9 (correcting amount earned to $41,895.00) and page 13 of 14 at line 14.

e. No one expressed any objection to any part of the First Fee Application and the Application was granted.

37. On **September 9, 2013**, I filed Special Counsel's Second Fee Application. Exhibit 15.

a. Under section titled Factual Background of Action Involving Special Counsel I related the factual background of the action in individually marked paragraphs 1-28.

b. Under the section titled Services Performed and Fees Incurred, I summarized, in individually numbered paragraphs, the services performed and costs incurred.

c. In Addendum A I provided an accounting of time spent on the matter, the subject matter for which the fees were incurred and the total number of hours expanded (30.75) and the total amount of fees earned ($13,837.50) with no additional costs.

d. I reviewed the Second Fee Application for accuracy. I did not find any errors. In retrospect, I cannot confirm or deny whether the 2013-05-14 entry for 0.25 hrs was properly billed to this file as it addresses a conference with counsel in a different matter. I do not recall. In the abundance of caution, I hereby modify the Second Fee Application in order to take off 0.25 of my time, or $112.50, from the entire bill.

e. No one expressed any objection to any part of the Second Fee Application and the Second Fee Application was granted.

38. It is important to emphasize that I did not *ever* made any statements to the Court that were intentionally inaccurate nor did I *ever* intentionally fail to disclose to the Court any fact.

39. Other than the complete disclosures and utter candor to the Court throughout this proceeding as narrated above, I am not aware of any fact that caused the Court to issue the allegations in its Order to Show Cause.

Dated this 8th day of December, 2014.

_____
Peter Strojnik